**UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

**MARY E. ALLEN, et al.,**

        **Plaintiffs,**

**v.**                                          **Case No. 3:10cv00142/MCR/CJK**

**SCHOOL BOARD FOR SANTA
ROSA COUNTY, FLORIDA, et al.,**

        **Defendants**.

_____/

**O R D E R**

    In this lawsuit filed under 42 U.S.C. § 1983, twenty-four individuals, including teachers and staff of the Santa Rosa County School District ("School District"), current and former students, parents, and community clergy members allege constitutional violations against the defendants as a result of a consent decree entered into by the School Board to address longstanding and widespread Establishment Clause violations in the school district, and implementing school policies.[1]  The plaintiffs seek preliminary and permanent injunctive relief as well as damages.[2]  Currently pending before the court is plaintiffs'

---

[1]  The consent decree was entered in a prior suit between two students and the School Board for Santa Rosa County, Florida ("School Board").  *See Minor I Doe v. School Board for Santa Rosa County, Fla.*, 3:08cv361, Consent Decree, Doc. 94 (N.D. Fla. May 6, 2009) (hereafter the "Doe litigation").  Currently, in the *Doe* litigation, an appeal is pending before the Eleventh Circuit Court of Appeals in which Christian Educators' Association International ("CEAI"), a teachers' association, challenges the denial of its motion to intervene.  *See Christian Educators Assoc., et al.*, No. 10-11188-C (11th Cir.).  Because CEAI represents at least three school employees who are plaintiffs in this case and testified for CEAI at the hearing on its motion to intervene, and because this order addresses some if not all of the claims they raised in the *Doe* litigation, the appeal now may be moot.  The court encourages CEAI to consider whether, in light of this order, it is necessary to have the Eleventh Circuit expend its resources to decide the appeal.

[2]  Specifically, the complaint, filed pursuant to 42 U.S.C. § 1983, consists of six counts and includes allegations of First and Fourteenth Amendment violations:  Count I, violation of freedom of speech; Count II, violation of freedom of association; Count III, violation of equal protection; Count IV, violation of free exercise

renewed motion for preliminary injunctive relief[3] (doc. 66), which the defendants oppose (docs. 28, 79, 83), and defendants' motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), (6) (docs. 22, 23, 56, 64), which plaintiffs oppose (docs. 35, 63, 82). Plaintiffs each filed a declaration in support of their motion for preliminary injunction, setting forth their claims, and asserting generally that their First Amendment rights are being violated and chilled every day by the consent decree and the School Board's implementation of related school policies.[4] In response, the defendants have challenged plaintiffs' standing on the grounds that plaintiffs cannot show an injury because the speech and conduct that are the focus of the plaintiffs' complaints either are not in fact restricted or are properly restricted under the consent decree and Constitutional principles and thus cause no redressable injury. *See* Fed. R. Civ. P. 12(b)(1). They also seek dismissal on grounds that plaintiffs' allegations fail to state a claim. *See* Fed. R. Civ. P. 12(b)(6). The court, having carefully considered the motions and the arguments of the parties,[5] now denies the motions to dismiss and grants the motion for a hearing on the preliminary injunction.

**Background**

On May 6, 2009, in a prior lawsuit, the School Board, superintendent, and principal of Pace High School voluntarily admitted liability for claims of widespread Establishment Clause violations in the School District and entered into a consent decree with certain

---

of religion; Count V, violation of the Establishment Clause; and Count VI, invalidation of the consent decree as moot. (Doc. 1.)

[3] In an earlier order (doc. 45), the court denied without prejudice plaintiffs' motion for a preliminary injunction and required the joinder of indispensable parties, consisting of all parties to the original consent decree in the *Doe* litigation, on grounds that the plaintiffs present demand for relief seeks an order vacating the consent decree, which could not be granted without the presence of the original parties to the consent decree. *See* Fed. R. Civ. P. 19(a)(1)(A); *Steingruber v. Johnson*, 35 F. Supp. 662, 663 (M.D. Tenn. 1940) (finding the court "powerless" to order permanent injunctive relief that required changing, altering, or amending the terms agreed to in a prior consent decree without the consent of all parties to the original decree). Now, pursuant to the court's order, all parties who signed the consent decree but were not originally included in this suit – the "minor Doe plaintiffs" and the principal of Pace High School in his official capacity – have been served and made appearances, and the case is now ready to proceed on the renewed motion.

[4] Plaintiffs have attached many of these policies to their complaint.

[5] The court has also considered defendants' notice of supplemental authority (doc. 55), and plaintiffs' response (doc. 65).

unnamed student plaintiffs in an effort to craft a remedy and avoid further litigation expenses.[6] The consent decree was "designed to ensure that the School District's practices do not violate, either currently or in the future, the First Amendment rights of students in the School District."[7] (Doc. 1-1.) It generally states that school officials are prohibited from promoting or engaging in prayer in their official capacity at a school event, attending a baccalaureate service in their official capacity, or advancing their personal religious beliefs to students during school events.[8] Also, the consent decree explicitly provides that conduct not expressly prohibited "is permitted as authorized by law." (Doc. 1-1.)

On July 1, 2009, after final judgment had been entered in the *Doe* litigation, an organization known as Christian Educators' Association International ("CEAI"), sought to intervene in the case. The court denied intervention on the grounds that CEAI lacked

---

[6] According to the complaint in the *Doe* litigation, the Santa Rosa County School District had a policy and custom of permitting school officials to engage in Establishment Clause violations, which were persistent and widespread and included such acts as school-approved prayer and invocations at graduation ceremonies; teacher-led after-school student religious meetings with Bible readings and prayer; teachers and other school officials extolling their faith to students during school-sponsored events and in class; teachers assigning religiously oriented school work and encouraging students to attend religious student clubs; a teacher preaching to students before school in the parking lot with the use of a bullhorn; and teachers inviting students to lead prayers before or during sporting events and other school activities. The complaint further alleged that the School Board had actual knowledge of these practices and Establishment Clause violations as early as May 2006, yet the violations persisted without remedial action by the School Board. *See Doe* litigation, No. 3:08cv361 (doc. 1) (N.D. Fla.).

[7] On request of the parties, the court adopted the consent decree and retained enforcement jurisdiction for a period of five years.

[8] More specifically, the consent decree provides that school officials shall not promote, advance, endorse, participate or cause prayers during or in conjunction with a school event; that school officials may not plan, organize or sponsor a religious service such as baccalaureate for any school in the District or attend or participate in a private baccalaureate service in an official capacity; that school events may not be held at religious venues when an alternative venue is reasonably suitable; that school officials shall not promote their personal religious beliefs to students in class or during a school event or express personal religious beliefs to students through symbolic means, except as jewelry or religious articles of clothing; and that school officials shall not display religious symbols or quotations from sacred books on classroom walls or District's property absent an articulated nonreligious pedagogical reason; shall not include religious beliefs or preferences on the school's web page; and shall not cite to the Bible as historical or scientific fact. The consent decree also requires that school officials comply with the Equal Access Act, 20 U.S.C. § 4071, *et seq.* (Doc. 1-1.)

associational standing,[9] because the claims asserted were speculative and also because the motion to intervene was untimely.[10] *See Minor I Doe v. School Board for Santa Rosa County, Fla.*, 264 F.R.D. 670 (N.D. Fla. 2010) (appeal pending). The court acknowledged that questions of overbreadth and vagueness could be cured through a case-by-case analysis and that employees could institute a separate lawsuit to assert specific violations of their individual rights. *Id.* at 687 n.31 & 691 n.37. The court also rejected CEAI's argument that the consent decree was moot due to subsequent events, concluding that, because the consent decree was filed on May 6, 2009, final judgment was entered on May 11, 2009, and no appeal was taken, it had become a final judgment prior to the named plaintiffs' graduation at the end of May 2009. *See Minor I Doe v. School Board for Santa Rosa County, Fla.*, 711 F. Supp.2d 1325, 1328-29 & n.9 (N.D. Fla. 2010); *Minor I Doe v. School Board for Santa Rosa County, Fla.*, 711 F. Supp.2d 1320 (N.D. Fla. 2010).

Throughout the summer and fall of 2009, the School District offered training regarding its interpretation of the consent decree and developed policies to implement it.[11] The plaintiffs then filed this lawsuit in May 2010, seeking to enjoin the defendants from enforcing the consent decree and related policies. Their complaint consists of 312 separate paragraphs, 241 of which contain factual allegations in support of their claims that the consent decree and school policies violate their First and Fourteenth Amendment rights of freedom of speech, freedom of association, equal protection, and religion. The plaintiffs'

---

[9] CEAI members Vicky Kirsch, Denise Gibson, and Michelle Winkler (who are plaintiffs in this suit) testified at a hearing on the motion to intervene in an attempt to demonstrate that the association had standing to intervene. The court found that their alleged injury was speculative and did not amount to an objectively reasonable "chill" of their free speech rights in light of the plain language of the consent decree, which applies only to official-capacity speech and conduct. Each is now a named plaintiff in this lawsuit, and many of the claims CEAI sought to assert in the *Doe* litigation are repeated or expanded upon in this lawsuit challenging both the consent decree and school policy.

[10] CEAI did not attempt to intervene until July 2009, after the consent decree had become a final judgment.

[11] Many of the policies were developed through direct questions asked by teachers and staff, answered by the School Board's attorney, and disseminated to the employees in written form.

factual assertions in support of these claims are many and varied.[12]  Teachers Gayle Lindsey, Vicki Kirsch, Jessica Barnes, Denise Gibson, Robert Metty, Deandrea Dawson, Martha Gough, Kace Browning, Sheila Bozeman, Rebekah Nolan, Nancy Lay, and Mittie Waller are employed in schools throughout the School District, and employee Michelle Winkler is a clerical assistant for the School Board.  They generally assert that the consent decree combined with the School Board's policies, including some specific verbal threats of discipline, violate their constitutional rights by forcing them to engage in self-censorship of their own religious speech and conduct during school and school events and to engage in hostile censorship of others.  Specifically, there are allegations that school officials threatened Plaintiff Metty with discipline if he wore school colors or sat next to other teachers at a private baccalaureate service, and the other plaintiff teachers now fear discipline for their personal participation in baccalaureate services.  Allegations also include fear of keeping personal religious items on top of their desks; using common phrases or religious messages in communications on school grounds or in school email; discussing matters of religion with parents and students; and praying and engaging in Bible study with colleagues or students at school during noninstructional time due to school policies or inconsistencies between school policies and the consent decree.  The plaintiffs complain that they are prohibited from leading and speaking at after-school student religious clubs; participating with students in prayers at after-school club meetings and at a community "See You at the Pole" event; and identifying themselves as followers of Christ on the School District's teacher web page.

---

[12]  Plaintiffs have attached to their complaint the consent decree and the superintendent's letter instructing employees to follow its terms or risk discipline; a School Board issued technical assistance paper distributed to employees by the School Board entitled, "The First Amendment in Santa Rosa County Public Schools" (hereinafter "technical assistance paper"); a letter written by student body president, Chaz Riley, and related emails by school officials which resulted in the phrase "God bless" being edited out of the letter; and the "Pace High Band Booster Members" policy requiring parent volunteers to agree not to engage students "in religious dialogue or the like" while they are acting as chaperones (doc. 1-7), all of which the court has considered, including with regard to the motions to dismiss for failure to state a claim.  *See Brooks v. Blue Cross and Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1368-69 (11th Cir. 1997) (noting the Rule 12(b)(6) analysis "is limited primarily to the face of the complaint and attachments thereto").

Former students Mary Allen, Chaz Riley, H.H, and Falyn Martin; as well as current students H.J.H. and S.M.H., claim that the School Board has infringed on or threatened their constitutional rights by prohibiting their religious speech at graduation; censoring the phrase "God Bless" out of a letter to the student body from the student body president; restricting their speech in the lunchroom and other noninstructional time; and not permitting a student to act as a student prayer leader though voluntarily selected to that position by classmates. Additionally, they assert their rights are violated because they can no longer engage in religious discussions with teachers and that student religious clubs are prohibited from inviting regular outside guest speakers or having teacher supervisors.

Parent plaintiffs Mary Beckham and Philip Moon complain that the Pace High School Band Boosters' member policy is overly broad and restricts their free speech rights. Parent plaintiff Kristan Harley complains that the consent decree and School Board's policies have hindered her communications with her children's teachers. Additionally, two community clergy members, Joseph Rogers and James Waters, assert that their constitutional rights are being violated because the consent decree and School District policies infringe on the manner in which they conduct private baccalaureate services and prevent clergy from organizing and regularly attending after-school religious activities for students held on campus while school facilities are available to other private groups.

## Discussion

## Motions to Dismiss

### Legal Standards

Because "[f]ederal courts are courts of limited jurisdiction," *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381 (1994), a complaint must be dismissed if the court lacks subject matter jurisdiction, *see* Fed. R. Civ. P. 12(b)(1). Standing is a "'threshold jurisdictional question'" that must be addressed and satisfied at each stage of the litigation.[13]  *See Fla. Family Policy Council v. Freeman*, 561 F.3d 1246, 1253 (11th Cir.

---

[13]   A motion to dismiss for lack of standing under Rule 12(b)(1) presents a question of law, and "facts outside of the pleadings may be considered as part of that determination."  *Goodman ex rel. Goodman v. Sipos*, 259 F.3d 1327, 1332 n. 6 (11th Cir.2001).  Thus, even at the pleading stage, the court must examine

2009) (quoting *Elend v. Basham*, 471 F.3d 1199,1204 (11th Cir. 2006)); *see also Beta Upsilon Chi Upsilon Ch. at the Univ. of Fla. v. Machen*, 586 F.3d 908, 915 (11th Cir. 2009). Article III of the United States Constitution permits the court to hear only "Cases" and "Controversies." U.S. Const. art. III, § 2; *see Warth v. Seldin*, 422 U.S. 490, 498 (1975). The doctrine of standing identifies whether a dispute is a case or controversy that can be "appropriately resolved through the judicial process." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal marks omitted). Article III standing has three elements: (1) injury in fact to "a legally protected interest" that is "'(a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical;'" (2) "'a causal connection between the injury and the conduct complained of'" that is fairly traceable to the defendant's action; and (3) a redressable injury. *Fla. Family Policy Council*, 561 F.3d at 1253 (quoting *Lujan*, 504 U.S. at 560-61). The plaintiffs, as the party invoking the court's jurisdiction in this instance, bear the burden to establish standing. *Amnesty Int'l v. Battle*, 559 F.3d 1170, 1177 (11th Cir. 2009).

"[T]he injury for standing need not be actualized" but exists where the threatened injury is real, immediate, and direct." *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008). In other words, "a plaintiff need not expose himself to enforcement of a law to challenge it in the First Amendment context; instead, an actual injury can exist when the plaintiff is chilled from exercising her right to free expression or forgoes expression in order to avoid enforcement consequences." *Bloedorn v. Grube*, 631 F.3d 1218, 1228 (11th Cir. 2011). Where a government restriction is alleged to produce a "chilling effect" on First Amendment rights resulting in self-censorship of constitutionally permissible conduct in order to avoid possible punishment, the chilling effect may satisfy the actual injury requirement of standing where the self-censorship is engaged in to avoid a real threat of enforcement consequences. *See Pittman v. Cole*, 267 F.3d 1269, 1283 (11th Cir. 2001). This requires a plaintiff to show "an intention to engage in a course of conduct arguably

---

the record as a whole to determine whether there is subject matter jurisdiction and accept the undisputed facts in the record as true. *See Elend*, 471 F.3d at 1208; *see also Lawrence v. Dunbar*, 919 F.2d 1525, 1528-29 (11th Cir. 1990) (distinguishing between a facial and factual attack on the complant).

affected with a constitutional interest," but prohibited, and that there is a credible threat of enforcement consequences as a result of engaging in that conduct. *Id.*; *see also Dermer v. Miami-Dade County*, 599 F.3d 1217, 1220-21 (11th Cir. 2010). "A party's subjective fear that she may be prosecuted for engaging in expressive activity will not be held to constitute an injury for standing purposes unless that fear is objectively reasonable." *Wilson v. State Bar of Ga.*, 132 F.3d 1422, 1428 (11th Cir. 1998). For an injury to be imminent, the key is "that the anticipated injury occur within some fixed period of time in the future," and "not too far off." *Am. Civil Liberties Union of Fla., Inc. v. Miami-Dade County Sch. Bd.*, 557 F.3d 1177, 1193-94 (11th Cir. 2009), *cert. denied*, 130 S. Ct. 659 (2009).

"Standing is not dispensed in gross. Rather, a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Davis*, 554 U.S. at 734 (internal marks and citation omitted). The Supreme Court has explained that, "[a]lthough standing in no way depends on the merits of the plaintiff's contention that particular conduct is illegal, it often turns on the nature and source of the claim asserted." *Warth*, 422 U.S. at 500 (internal citation omitted). This requires consideration of "whether the constitutional or statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief." *Id.* Stated another way, the court must examine carefully the allegations of the complaint and the record as a whole "to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted." *Elend*, 471 F.3d at 1205-06 (internal marks omitted). The relevant question is not whether the plaintiff has a legal right to be free from certain conduct or is legally entitled to the relief sought, but whether the plaintiff has sufficiently alleged a personal stake in the outcome. *Mullhall v. Unite Here Loc. 355*, 618 F.3d 1279, 1286 (11th Cir. 2010).

When ruling on a motion to dismiss for failure to state a claim, *see* Fed. R. Civ. P. 12(b)(6), the court takes the facts alleged in the complaint as true and construes them in the light most favorable to the plaintiff. *See Harris v. United Auto. Ins. Group, Inc.*, 579 F.3d 1227, 1230 (11th Cir. 2009). Federal pleading rules require a claim for relief to include only a short and plain statement of the grounds for the court's jurisdiction; "a short

and plain statement of the claim showing that the pleader is entitled to relief;" and a demand for relief. Fed. R. Civ. P. 8(a). The Rule 12(b)(6) analysis "is limited primarily to the face of the complaint and attachments thereto." *Brooks v. Blue Cross and Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1368-69 (11th Cir. 1997). The motion will be denied if the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). This "plausibility standard" requires a showing of "more than a sheer possibility" that the defendant is liable on the claim. *Id.* The allegations of the complaint must set forth enough facts "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In other words, the complaint must contain sufficient factual matter, accepted as true, to permit a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949.

Thus, the court must examine the plaintiffs' claims to determine whether each alleges an injury that satisfies the standing inquiry for purposes of Rule 12(b)(1), and whether the plaintiffs have stated a claim for purposes of Rule 12(b)(6). The court's task in this respect is complicated by the fact that the complaint does not delineate which facts are associated with which counts but instead incorporates into each count the factual allegations in all 241 paragraphs. The court has expended a significant amount of time reviewing the factual allegations and arguments of the parties and concludes it is not an efficient use of judicial resources to delineate them allegation by allegation in this order. At this stage, the court will consider only whether the allegations as a whole and taken as true sufficiently demonstrate standing[14] and whether the plaintiffs have stated a claim to satisfy the rules of notice pleading with regard to each count of the complaint.

---

[14] No material facts are in dispute relevant to the standing inquiry; defendants submitted no affidavits in support of the motions to dismiss. Thus, the defendants present a facial attack, *see Lawrence*, 919 F.2d at 1528-29, and court accepts the facts alleged in the complaint as true and determines that a hearing is not necessary to resolve the standing issue in this case. *See Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990) (stating, "[w]hen a district court does not conduct a discretionary evidentiary hearing on a motion to dismiss for lack of jurisdiction, the plaintiff must establish a *prima facie* case of personal jurisdiction").

Standing Analysis[15]

Because standing is a threshold jurisdictional issue, the court will first consider whether each plaintiff has adequately alleged a concrete and particularized injury. As a whole, the complaint contains 241 paragraphs which outline in great factual detail all of the situations in which the consent decree and school policies arguably conflict with the plaintiffs' individual constitutional rights; instances in which teachers, students, and parents have altered their conduct to avoid discipline or to participate in a volunteer organization; and allegations that school officials threatened discipline in circumstances where individual First Amendment rights may exist. As discussed below, the consent decree, policies, and threat of discipline combine to provide an objectively reasonable basis for plaintiffs' claims of First Amendment chill sufficient to demonstrate standing for many of them.

Beginning with the employees, their factual allegations demonstrate that confusion exists regarding when they are acting in their official capacity, subject to the restrictions in the consent decree and other school policies, or when they are free to act or speak in a private capacity at school events; that confusion exists regarding inconsistencies between the terms of the consent decree and other school policies either permitting or restricting certain types of expressive speech or conduct at school; and that there have been specific threats of discipline by school officials regarding a teacher's participation in private baccalaureate services. According to plaintiffs, these facts combine to "chill" their exercise of First Amendment rights by causing them to self-censor constitutionally protected speech and religious conduct at school and at school events. The defendants argue that the employees lack standing because their fears are hypothetical and not objectively reasonable in light of the plain language of the consent decree and school policies, neither of which expressly precludes all of the speech or conduct that the plaintiffs allege is

---

[15] Defendants initially argued that plaintiffs lack standing to secure relief that is inconsistent with the consent decree because the *Doe* litigation plaintiffs were not a part of this lawsuit. This has been remedied. All original parties to the consent decree have now been joined in this suit. Moreover, the order denying intervention in the *Doe* litigation recognized that employees could pursue separate litigation to remedy actual or imminently threatened personal constitutional violations arising from the consent decree and school policies, which, at the time intervention was sought, had not yet been implemented.

impermissibly restricted. Defendants maintain further that the employees have no objectively reasonable injury because the Establishment Clause mandated that the School District enter into the consent decree in the *Doe* litigation. Defendants argue that personal, non-officially sanctioned prayer and religious conduct is allowed under the consent decree and school policies.

Applying the legal principles articulated above, the court finds at this stage of the litigation that the employees' allegations of chill to their right to free speech and religious exercise, accepted as true for purposes of the motion to dismiss, sufficiently state an injury. The consent decree, together with the school policies,[16] arguably place restrictions on the free speech rights of School District employees by preventing them from praying with students and expressing their personal religious beliefs to students in class, at school events, on teacher web pages and in school email.[17] The employee plaintiffs also allege that school officials have specifically instructed teachers, Metty in particular, to refrain from engaging in certain expressive conduct at a private baccalaureate service or face discipline, and other teachers allege their personal participation at baccalaureate services has been chilled. Additionally, teachers complain they have been instructed by school officials to censor speech in ways that are potentially in conflict with the consent decree, school policies, or the Establishment Clause. Every employee plaintiff complains of overbreadth and vagueness inherent in the consent decree itself and arising from inconsistencies between the terms of the consent decree and the subsequently adopted school policies, which have caused them to alter their conduct and leaves them uncertain regarding what conduct is permitted or will subject them to discipline under the policies while attending school events. The employee plaintiffs therefore have sufficiently pled facts alleging an arguable First Amendment injury (even if some of the particular factual

---

[16] The school policies were not addressed in the prior *Doe* litigation because they had not yet been implemented at the time CEAI sought to intervene.

[17] Whether these are constitutionally permissible restrictions is a question for another day; it is sufficient for now that the employee plaintiffs have alleged a personal stake in the outcome. *Mullhall* , 618 F.3d at 1286.

allegations may be too speculative by themselves to provide a basis for standing).[18] There is an objectively reasonable threat to First Amendment rights, traceable to the School Board's policies and consent decree, and redressable by a favorable judgment because all parties to the consent decree are now joined in this suit. *See Bloedorn*, 631 F.3d at 1228-29.

The former and current students[19] also have alleged injury for standing purposes, with the exception of Martin. The students allege that the consent decree, together with the school's implementing policies and specific prohibitions or restrictions by school officials, have impermissibly infringed their First Amendment rights in various ways. The allegations include that school officials precluded Allen from speaking at graduation because of religious content in her speech; school officials censored Riley's student body letter; school policy and school officials impeded Martin's ability to organize and conduct successful religious student club meetings; and school officials have restricted or prohibited S.M.H., H.H. and H.J.H. from engaging in voluntary, student-led and student initiated prayer, devotions, or Bible reading during noninstructional time at school. These claims state an injury that is traceable to the School Board and redressable by a favorable decision. *See Bloedorn*, 631 F.3d at 1228-29.

---

[18] The finding of no associational standing in the *Doe* litigation was made after a hearing on a record where the testifying teachers and staff merely alleged subjective fears based on their own interpretation of the consent decree – based on hypothetical situations, with no concrete factual context and no threats of discipline for particular conduct. Notably, at that time, the school had not yet implemented its policies. In this case, however, the employee plaintiffs challenge now-implemented school policy and allege specific threats of discipline for engaging in particular conduct, which the court accepts as true at this stage. *See Made in the USA Foundation v. U.S.*, 242 F.3d 1300, 1307 n.13 (11th Cir.) (citing *Warth v. Seldin*, 442 U.S. 490, 501 (1975)), *cert. denied*, 534 U.S. 1039 (2001). The number of plaintiffs and claims in this case well illustrates that substantial confusion exists regarding what speech or conduct is permitted during school events that the employees attend voluntarily and in contexts where they might legitimately retain personal free speech rights.

[19] The defendants assert that the claims for declaratory and injunctive relief by former students are moot due to the fact that they have graduated and no longer are students in the school district. The plaintiffs agree that graduation moots a former student's claim and assert that the former students make only a demand for money damages (Doc. 35, at 22; Plaintiffs' Consolidated Response in Opposition to Defendants' Motions to Dismiss, at 18.). The court agrees. *See Adler v. Duval County Sch. Bd.*, 112 F.3d 1475, 1478 (11th Cir. 1997). The defendants also argue that plaintiffs have not pleaded their claims for damages with sufficient particularity. The court concludes that the prayer for relief, seeking "damages as are just and appropriate," sufficiently pleads a plausible claim for nominal damages.

Martin's allegation that school officials and the consent decree interfered with her ability to plan and conduct meetings of First Priority, which is a Christian extra-curricular religious student club, by prohibiting teachers and staff from serving as advisors and speakers cannot be redressed by a favorable decision. First, the consent decree does not directly restrict student conduct.[20] Second, the School Board's policy adopting the consent decree expressly incorporates the terms of the Equal Access Act. The Act provides that schools with a "limited open forum" may not discriminate against any students who wish to conduct a meeting within that limited open forum on the basis of the religious content of the speech at the meetings, and provides rules that, if followed, ensure the school has offered "a fair opportunity" to students who wish to conduct a meeting within its limited open forum, 20 U.S.C. § 4071(c); these rules preclude impermissible entanglement of religion in the school. *See Bd. of Educ. of Westside Cmty. Schs. v. Mergens*, 496 U.S. 226, 252-53 (1990) (plurality). The Act requires, in part, that there be no sponsorship of the student meeting by the school or its employees and that any school employees present must be present in a nonparticipatory capacity. 20 U.S.C. § 4071(c)(2), (3). Martin seeks a judgment that would permit school employees to participate in the religious student club contrary to the statute, which she has not challenged. The court could not grant judgment in her favor when she makes no claim that the statute is unconstitutional, particularly in light of her allegations that the school followed its policy and the terms of the Equal Access Act. *See KH Outdoor, L.L.C. v. Clay County, Fla.*, 482 F.3d 1299, 1303-04 (11th Cir. 2007). Therefore, this claim is not redressable.

Martin also claims that her First Amendment rights have been violated because the teachers no longer engaged in religious discussions with her about her spiritual needs after entry of the consent decree. Even if true, this allegation does not refer to a restriction on Martin's free speech or free exercise rights. School policy does not restrict her speech in

---

[20] The consent decree was explicitly designed to ensure that the School District's practices do not violate the students' First Amendment rights. Nonetheless, although the students are not bound by the consent decree, to the extent school policies implemented pursuant to it or school officials relying on it have restricted student speech, the students are entitled to bring suit challenging those policies. *See Jefferson County*, 720 F.2d at 1518.

this regard, only that of the teachers. Thus, no injury to her is shown. A "party seeking judicial resolution of a dispute must show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the other party;" in other words, the right to bring suit is not extended to "innocent bystanders." *Diamond v. Charles*, 476 U.S. 54, 62 (1986) (internal marks omitted). Therefore, Martin lacks standing.[21]

Defendants also argue that the parent plaintiffs lack standing to sue. Parents Kristan Harley and Mary Beckham allege that the consent decree and School Board policies prohibiting teachers from discussing matters of faith have hindered their communications with their children's teachers. Additionally, Harley asserts that as a result of the consent decree and school polices, she now receives incomplete or confusing responses from teachers in emails because the teachers must reply to her emails by beginning a new correspondence if she has attached a religious message to her email (that is, she asserts her constitutional rights are violated because the teacher must send a new message rather than use the "reply" button, which would otherwise automatically resend the original religious message back to her along with the teacher's response). These allegations do not indicate that the parents' speech has been restricted or threatened in any way by the consent decree or school policy. Parents are not subject to the consent decree or school policy, neither of which even purports to restrict a parent's speech to a teacher. Accordingly, Harley has not alleged facts showing injury to her legally protected rights, and she therefore lacks standing. *See Lujan*, 504 U.S. at 560; *see also Diamond*, 476 U.S. at 62.

Parents Mary Beckham and Philip Moon allege that their speech is impermissibly restricted because in order to serve as a school volunteer, they must agree to the terms of an allegedly overbroad school policy prohibiting them from entering "into a dialogue with students regarding religion, religious views or the like," despite the fact that the school's policy otherwise invites the volunteers to share their views and experiences with students. In the case of Beckham and Moon, the alleged restriction on their speech states a personal

---

[21] To the extent either of Martin's allegations are sufficient for standing purposes, the court alternatively rules that they fail to state a claim for the same reasons.

injury for standing purposes, traceable to the school policy, and redressable through a favorable judgment.[22]

The defendants argue that the clergy plaintiffs, Rogers and Waters, lack standing because neither the consent decree nor the School Board's policies applies to them. Rogers and Waters allege that their job of planning private baccalaureate services is made more difficult because teachers are afraid to take part in planning or leading the service for fear of reprisal from the School Board. The clergy allege that school officials warned teachers not to participate in their baccalaureate services and forbade them from collectively coordinating their dress or seating in the church service to indicate they are District teachers. Neither the consent decree nor the School Board's policies apply to the clergy or restrict their religious exercise or speech. Therefore, the clergy are under no threat of discipline. Moreover, the facts alleged do not show a burden on their sincerely held religious beliefs.[23] Rogers and Water have not demonstrated a personal stake in the suit because the facts they allege do not show an actual personal injury or threat to their protected rights. Again, the right to bring suit is not extended to "innocent bystanders." *Diamond*, 476 U.S. at 62. Thus, Rogers and Waters lack standing on this claim.

Plaintiff Waters further complains that he is prevented by the consent decree and school policy from organizing and regularly attending private religious activities for school-aged children at the public middle schools, although prior to the issuance of the consent decree, he organized and led two such programs for students who voluntarily attended

---

[22] Defendants assert that the parents have no constitutionally protected right to serve as a volunteer. While there is no protected right to serve as a parent volunteer, the Supreme Court has emphasized that even though a person has no right to a government benefit and it may be denied for any number of reasons, the government "may not deny a benefit to a person on a basis that infringes his constitutionally protected interests – especially, his interest in freedom of speech." *Perry v. Sindermann*, 408 U.S. 593, 597 (1972); *see also Hyland v. Wonder*, 972 F.2d 1129, 1135 (9th Cir. 1992) (holding "the opportunity to serve as a volunteer constitutes the type of governmental benefit of privilege the deprivation of which can trigger First Amendment scrutiny"), *cert. denied*, 508 U.S. 908 (1993). Beckham asserts that the policy prohibits her from serving because she is unwilling to give up her constitutionally protected free speech rights. Moon asserts he has engaged in self-censorship for fear of being prohibited from participating.

[23] Waters asserted that two teachers, Carol Jones and Sheila Thompson were specifically told they would violate the consent decree if they participated in the baccalaureate service. These allegations do not show an injury to Waters.

them outside of regular school hours. According to Waters, he was previously permitted to engage in this speech and religious conduct at the school, and now is prohibited from doing so because of the religious content of the programs, though the school makes its facilities available for use by other private individuals and groups outside of regular school hours. Therefore, Waters has alleged that his speech and conduct is restricted by school policy, which states an injury that is traceable to the School Board and redressable by a favorable judgment. *See Bloedorn*, 631 F.3d at 1228-29. Accordingly, Waters has standing on this claim.

Rule 12(b)(6) Analysis

A brief overview of the substantive components of the plaintiffs' constitutional claims will lay the foundation for the analysis that follows. Count I alleges a violation of plaintiffs' free speech rights. The First Amendment provides, in part, that "Congress shall make no law . . . abridging the freedom of speech." U.S. Const. amend. I. This right, as it is incorporated through the Fourteenth Amendment, applies to states and municipalities, including municipal school boards. *See West Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 637 (1943); *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1268 (11th Cir. 2001). Freedom of speech is a cherished constitutional right, but it is not without boundaries. *See Holloman*, 370 F.3d at 1271. For example, although there is no doubt that teachers and students do no not "shed their constitutional rights to freedom of speech or expression at the schoolhouse gate," the analysis of their First Amendment rights must be "applied in light of the special characteristics of the school environment." *Tinker v. Des Moines Indep. Community Sch. Dist.*, 393 U.S. 503, 506 (1969). The Supreme Court "has repeatedly emphasized the need for affirming the comprehensive authority of the States and of school officials, consistent with fundamental constitutional safeguards, to prescribe and control conduct in the schools." *Id.* at 507. Special considerations arise depending on whether the speech involves student expression, *see Bannon*, 387 F.3d at 1213; or teacher expression in varying contexts, *see also Bishop v. Aronov*, 926 F.2d 1066, 1072 (11th Cir. 1991) (balancing the interests of a university against a professor's speech rights

in the classroom), *cert. denied*, 505 U.S. 1218 (1992).[24]  The First Amendment free speech analysis requires consideration of several factors, including the nature of the speech at issue, the capacity of the speaker, and the forum in which the speech occurs or is regulated.  Also, a local government or school board is free to make content-based choices and impose restrictions on its own speech, as long as the decisions do not result in government establishment of religion.  *See Pleasant Grove City, Utah v. Summum*, 129 S. Ct. 1125, 1131 (2009) (noting the Free Speech Clause has no application to government speech); *Rosenberger v. Rector and Visitors of Univ. of Va.*, 515 U.S. 819, 833 (1995) (stating the government may "regulate the content of what is or is not expressed when it is the speaker").[25]  When the government chooses to create a limited forum, it may exclude speech where the exclusion is "reasonable in light of the purpose served by the forum" and does not "discriminate against speech on the basis of its viewpoint."  *Rosenberger*, 515 U.S. at 829 (internal marks omitted).  Additionally, while public employees certainly do not lose all First Amendment protection by virtue of their public employment, a public employer "may reasonably restrict the speech rights of employees more readily than those of other persons," and courts must balance the interests of the school's educational mission against the teacher's expressive interests to determine the full extent of rights in the school context.  *Bishop*, 926 F.2d at 1074; *see also Pickering v. Board of Education*, 391 U.S. 563, 568 & 574 (1968) (applying a balancing analysis to the public speech of government employees who are acting outside of their official responsibilities).  "Tangential to the authority over its curriculum, there lies some authority over the conduct of teachers in and our of the classroom that significantly bears on the curriculum or that gives rise to the appearance of endorsement by the [school]."  *Id.*

---

[24]  *See also Garcetti v. Ceballos*, 547 U.S. 410, 418-425 (2006) (noting the government has broader discretion to restrict speech as an employer, "but the restrictions must be directed at speech that has some potential to affect the entity's operations;" the Court did not decide whether the analysis would apply in the same manner to teachers).

[25]  As the Court emphasized in *Santa Fe Indep. Sch. Dist. v. Doe*, "there is a crucial difference between *government* speech endorsing religion, which the Establishment Clause forbids, and *private* speech endorsing religion, which the Free Speech and Free Exercise Clauses protect."  530 U.S. 290, 302 (2000) (internal marks omitted).

Without question, these inquiries present a difficult and challenging task for courts due to "the enormous variety of fact situations" that may arise in the First Amendment context. *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006) (internal marks omitted).

Count II alleges a violation of plaintiffs' freedom of association. The right to associational freedom, like the right to free speech, varies by context. Expressive association generally protects an individual's ability "to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends."[26] *Roberts v. U.S. Jaycees*, 468 U.S. 609, 622 (1984). Claims of expressive association and free speech are closely linked and often merge. *Christian Legal Soc. Chapter of the University of Cal., Hastings Coll. of the Law v. Martinez*, 130 S. Ct. 2971, 2985 (2010). A government is prohibited from restricting the freedom of association by imposing penalties or withholding benefits from members of a disfavored group, attempting to require disclosure of the group's membership, or interfering with the internal organization or affairs of the group in a manner that impairs the group's ability to express its views. *Roberts*, 468 U.S. at 623.

Count III alleges a violation of plaintiffs' equal protection rights. Simply put, "[t]he Equal Protection Clause requires the government to treat similarly situated persons in a similar manner." *Leib v. Hillsborough County Pub. Transp. Comm'n*, 558 F.3d 1301, 1305 (11th Cir. 2009).

Counts IV and V allege violations of the Free Exercise and Establishment Clauses, which prohibit the government from making laws "respecting an establishment of religion,

---

[26] This First Amendment right also protects claims of personal relationship association, which involve "the freedom to carry on certain intimate or private relationships," and these claims "may take various forms." *Bd. of Directors of Rotary Int'l v. Rotary Club of Duarte*, 481 U.S. 537, 545 (1987). The type of intimate relationships protected are not precisely delineated, but the Supreme Court has noted that this constitutional guarantee has been construed to protect personal relationships that touch on marriage, child bearing, matters of child rearing and education, and cohabitation. *Id.* None of the plaintiffs attempt to assert that such an intimate relationship is at issue in this case, and thus the court considers their freedom of association claims as involving expressive association.

or prohibiting the free exercise thereof."[27]  U.S. Const. amend. I.  To plead a valid free exercise claim, a plaintiff "must allege that the government has impermissibly burdened one of his 'sincerely held religious beliefs.'"  *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1294 (11th Cir. 2007) (quoting *Frazee v. Ill. Dep't of Employment Sec.*, 489 U.S. 829, 834 (1989)).  "The Establishment Clause, at the very least, prohibits government from appearing to take a take a position on questions of religious belief, or from making adherence to a religion relevant in any way to a person's standing in the political community."  *County of Allegheny v. Am. Civil Liberties Union Greater Pittsburgh Chapter*, 492 U.S. 573, 593-94 (1989) (internal marks omitted).  These clauses may overlap, and each is dependent upon the concept of "neutrality."  *See Sch. Dist. of Abington Tp., Pa. v. Schempp*, 374 U.S. 203, 222 (1963).  While the Free Exercise Clause prohibits government coercion or restraints on religion, the Establishment Clause requires that the purpose and primary effect of a law must not be to either advance or inhibit religion.  *Id.* For these reasons, "[s]chool sponsorship of a religious message is impermissible," *Santa Fe Indep. Sch. Dist. v. Doe*, 530 U.S. 290, 309 (2000), and, as noted above, a distinction must be maintained between "*government* speech endorsing religion, which the Establishment Clause forbids, and *private* speech endorsing religion, which the Free Speech and Free Exercise Clauses protect," *id.* at 302  (internal marks omitted).  The two religion clauses are, however, "cast in absolute terms, and either of which, if expanded to a logical extreme, would tend to clash with the other."  *Cutter v. Wilkinson*, 544 U.S. 709, 719 (2005) (internal marks omitted).  The following excerpt outlining this conflict is instructive:

> [W]hen the government endeavors to police itself and its employees in an effort to avoid transgressing Establishment Clause limits, it must be accorded some leeway, even though the conduct it forbids might inevitably be determined to violate the Establishment Clause and the limitations it imposes

---

[27]  These constitutional provisions guarantee "religious liberty and equality" not only to those who adhere to Christianity, but also "to the infidel, the atheist, or the adherent of a non-Christian faith such as Islam or Judaism."  *County of Allegheny v. Am. Civil Liberties Union Greater Pittsburgh Chapter*, 492 U.S. 573, 590 (1989).

might restrict an individual's conduct that might well be protected by the Free Exercise Clause if the individual were not acting as an agent of government.

> The decisions governmental agencies make in determining when they are at risk of Establishment Clause violations are difficult, and, in dealing with their employees, they cannot be expected to resolve so precisely the inevitable tensions between the Establishment Clause and the Free Exercise Clause . . . . Though school boards, like all instrumentalities of government, must observe the basic free exercise rights of its employees, the scope of the employees' rights must sometimes yield to the legitimate interest of the governmental employer in avoiding litigation by those contending that an employee's desire to exercise his freedom of religion has propelled his employer into an Establishment Clause violation.

*Marchi v. Bd. of Cooperative Educ. Servs. of Albany*, 173 F.3d 469, 476 (2nd Cir.) (internal citations omitted), *cert. denied*, 528 U.S. 869 (1999).  Thus, a local school board faces a difficult task in complying with its Establishment Clause responsibilities without infringing on the Free Exercise Clause rights of individuals.  Overall, the key to success in this task is maintaining "neutrality" toward religion.  *Schempp*, 374 U.S. at 222.

Count VI asserts that the consent decree should be vacated as moot.  This claim rests on the limitation imposed on a court's jurisdiction to adjudicate only actual cases or controversies.  U.S. Const. art. III, § 2; *see, e.g., Bd. of Sch. Comm'rs. of the City of Indianapolis v. Jacobs*, 420 U.S. 128, 129-30 (1975); *Mellon v. Bunting*, 327 F.3d 355, 363-65 (4th Cir. 2003), *cert. denied*, 541 U.S. 1019 (2004)

Defendants argue that the plaintiffs fail to state a claim because the policies the plaintiffs challenge either permit the conduct plaintiffs wish to engage in or proscribe conduct that is validly prohibited under Establishment Clause principles by virtue of the plaintiffs' employment.  As noted above, the court has carefully considered the many and varied factual allegations of the complaint.  Although the plaintiffs have alleged restrictions on their private speech and religious conduct while at school and school events, it is equally clear that the school has a valid First Amendment interest in imposing certain restrictions in this case.  Therefore, the court must engage in a forum analysis for some claims and a balance of interests for others, with many factors at play.  The highly factual nature of the First Amendment analysis will require a close examination of record evidence

and a careful consideration of the intersection between competing First Amendment clauses and the relevant school policies. Engaging in this type of detailed forum analysis on the basis of mere allegations without a full hearing of the numerous facts and contexts involved would not do justice to either side of this dispute. It is sufficient for now to conclude that the employees' factual allegations as a whole are sufficient to state a claim on Counts I, II, IV, and V.[28] The employees have made no allegations that other employees are similarly situated but treated differently under school policy. Therefore, they have failed to state an equal protection claim under Count III.

The students, with the exception of Martin, also allege facts sufficient to state plausible First Amendment claims. They allege that school officials precluded Allen from speaking at graduation because of religious content in her speech, censored Riley's student body president letter, and restricted or prohibited S.M.H., H.H. and H.J.H. from engaging in voluntary, student-led and student initiated prayer, devotions, or Bible reading during noninstructional time at school. Like the employees' claims, the intersection between student expressive conduct and school policies that censor or inhibit the students' free speech, free exercise, association and Establishment Clause rights will involve a highly fact intensive analysis which can best be performed on a fully developed factual record. Sufficient allegations of fact exist at this stage to survive a motion to dismiss with regard to these claims on Counts I, II, III, IV, and V.

Defendants argue that under a proper forum analysis, there is a valid Establishment Clause basis for the School District's restriction on the parent volunteers. Beckham and Moon allege they have served as volunteers and chaperones through the Pace High Band Boosters, but that the school's overly broad restriction on their speech, which states they "must not enter into a dialogue with students regarding religion, religious views or the like," (doc. 12-8, at 7), unconstitutionally encroaches on protected speech. They also argue that

---

[28] This is not to say that every discrete factual allegation in the complaint could stand alone as a claim. Because the complaint has lumped all of the plaintiffs and all of their allegations together for each count, the court's efforts to sift through each factual allegation and address each separately with the appropriate First Amendment analysis at this time has been frustrating and demonstrates the necessity of a fully developed record and legal briefing by the parties as a predicate to the court's forum analysis.

School Board policy otherwise encourages volunteers to exchange ideas and viewpoints with students and acknowledges that this exchange of ideas enriches the curriculum and provides valuable life lessons and additional knowledge. The plaintiffs argue that in light of this policy, the complete ban on religious discourse constitutes viewpoint discrimination. (Doc. 35-1.)[29]

A parent's volunteer service may be considered a quasi-employment relationship with the school district, and therefore is subject to the well-established standards that restrict government regulation of public employee speech. *See Smith v. Sch. Dist. of Philadelphia*, 158 F. Supp. 2d 599, 606-07 (E.D. Pa. 2001). Because it would be inconsistent with its Establishment Clause obligations for the School Board to permit official parent volunteers to engage students in speech that advances, endorses, encourages, or inhibits religion while engaging in their official volunteer duties, the school may constitutionally enact policies to avoid Establishment Clause concerns; however, the allegation that this policy amounts to a *complete* ban on *all* religious speech at school activities adequately alleges a plausible claim. *See Chandler v. Siegelman*, 230 F.3d 1313, 1317 (11th Cir. 2000) (stating "[p]rivate speech endorsing religion is constitutionally protected–even in school"), *cert. denied*, 533 U.S. 916 (2001). Accordingly, Beckham and Moon have stated plausible free speech claims.

Waters alleges that he had previously been permitted to lead after-school religious groups at the middle schools but now school policy precludes it, even though, as he alleges, other private groups are permitted to meet on school grounds. This sufficiently raises a plausible claim that the school has engaged in impermissible viewpoint discrimination. Many questions of fact necessary to the relevant First Amendment forum analysis remain to be determined, such as the type of forum the school has actually opened on its premises, the content of activities permitted within that forum, and how this may relate to the Equal Access Act provisions. *See generally Clark v. Dallas Indep. Sch. Dist.*, 806 F. Supp. 116, 121-22 (N.D. Tex. 1992) (concluding the Equal Access Act does

---

[29] This document was not attached to the complaint but is referenced in the exhibits attached to the complaint.

not preempt private First Amendment rights or "the case law interpreting the First Amendment's application to public schools").  It is sufficient at this stage that Waters' allegations, accepted as true, state a plausible claim.

Count VI

In Count VI, the plaintiffs allege that the consent decree is moot because the *Minor Doe* plaintiffs in the earlier litigation graduated before the time to appeal the consent decree had expired.  Defendants argue that this count should be dismissed on grounds of collateral estoppel or for the same reasons articulated by the court in the *Doe* litigation, that is, that the court had jurisdiction when the consent decree was entered.  *See Minor I Doe v. School Board for Santa Rosa County, Fla.*, 711 F. Supp.2d 1325, 1328-29 & n.9 (N.D. Fla. 2010); *Minor I Doe v. School Board for Santa Rosa County, Fla.*, 711 F. Supp.2d 1320 (N.D. Fla. 2010).

Collateral estoppel, or issue preclusion, "has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party *or his privy* and of promoting judicial economy by preventing needless litigation."  *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979) (emphasis added).  The prerequisites to issue preclusion are:

> (1) the issue at stake must be identical to the one involved in the prior litigation; (2) the issue must have been actually litigated in the prior suit; (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in that action; and (4) the party against whom the earlier decision is asserted must have had a full and fair opportunity to litigate the issue in the earlier proceeding.

*CSX Transp., Inc. v. Brh'd of Matinentance of Way Employees*, 327 F.3d 1309, 1317 (11th Cir. 2003).  This issue was litigated in the *Doe* litigation – CEAI raised the issue, the court addressed it as necessary to the court's subject matter jurisdiction, and the issue is now on appeal.[30]  Three of the plaintiffs in this case were CEAI members on whose behalf CEAI attempted to intervene in the *Doe* litigation.  Therefore, they are in sufficient legal privity

---

[30] "The bare act of taking an appeal is no more effective to defeat preclusion than a failure to appeal." 18A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 4433 (2d ed. 2002).

with CEAI that collateral estoppel now applies to preclude them from bringing this count. With regard to the other teacher plaintiffs, however, there is a question of fact regarding whether they, too, are in sufficient privity with CEAI for collateral estoppel to apply. There is also a legal question regarding whether a nonparty is permitted to bring a challenge based on mootness in a subsequent suit where there has been no legal action to enforce the consent decree. These issues will require further briefing and therefore, the court will deny the motion to dismiss Count VI without prejudice to the defendant's ability to raise the legal issue in a subsequent motion.

## Separate Motions to Dismiss

Superintendent Wyrosdick and the Principal of Pace High School moved to dismiss separately on grounds that the suit against them in their official capacities is redundant to the suit against the School Board. *See Monell v. N.Y. City Dept. of Soc. Servs.*, 436 U.S. 658 (1978). The court will deny Superintendent Wyrosdick's motion (doc. 22) because, as plaintiffs argue, nothing requires the dismissal of an officer when the local government body is also sued; plus, plaintiffs have alleged specific conduct on Wyrosdick's part that they seek to have enjoined. The court will also deny the Principal of Pace High School's motion. The court required the presence in this suit of the Principal of Pace High School and the minor *Doe* plaintiffs from the prior litigation because they were signatories to the consent decree, and the relief the plaintiffs seek includes vacating or modifying the consent decree. Therefore, for reasons stated in this court's prior order requiring joinder (doc. 45), the Principal's motion (doc. 56) also will be denied.

## Preliminary Injunction

The plaintiffs move for a preliminary injunction and a hearing (doc. 12). *See* Fed. R. Civ. P. 65(a). "[A] preliminary injunction in advance of trial is an extraordinary remedy." *Bloedorn*, 631 F.3d at 1229. "An injunction is an exercise of a court's equitable authority, to be ordered only after taking into account all of the circumstances that bear on the need for prospective relief." *Salazar v. Buono*, 130 S. Ct. 1803, 1816 (2010) (plurality). Further, "[e]quitable relief is not granted as a matter of course, and a court should be particularly cautious when contemplating relief that implicates public interests." *Id.* (citing *Weinberger*

*v. Romero-Barcelo*, 456 U.S. 305, 311-12 (1982)). In order for this court to grant a preliminary injunction, the plaintiffs must show (1) a substantial likelihood of success on the merits of their claims; (2) a substantial threat that they will suffer irreparable injury absent an injunction; (3) that the threatened injury to the plaintiffs outweighs the threatened harm the injunction would cause the defendants; and (4) that the injunction is not adverse to the public interest.[31] *See, e.g., Scott v. Roberts*, 612 F.3d 1279, 1290 (11th Cir. 2010); *Citizens for Police Accountability Political Committee v. Browning,* 572 F.3d 1213, 1217 (11th Cir. 2009), *cert. denied*, 130 S. Ct. 2141 (2010). The Eleventh Circuit has cautioned that because "a preliminary injunction is an 'extraordinary and drastic remedy,'" it is difficult to obtain. *Browning*, 572 F.3d at 1217 (quoting *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir.1998)). Indeed, the moving party must prove each factor and "failure to show any [one] of the four factors is fatal." *Miami-Dade County Sch. Bd.*, 557 F.3d at 1198. Additionally, "a prayer for injunctive and declaratory relief requires an assessment, at this stage in the proceeding, of whether the plaintiff has sufficiently shown a real and immediate threat of future harm;" thus, "for an injury to suffice for prospective relief, it must be imminent." *Elend*, 471 F.3d at 1207. While past exposure to harm suffices to survive a motion to dismiss on standing grounds, it is not enough by itself to warrant preliminary injunctive relief unless accompanied by "continuing, present adverse effects." *Id.*

Rule 65 permits the court to advance the trial on the merits and consolidate it with the hearing on the preliminary injunction. Fed. R. Civ. P. 65(a)(2). "[W]here such action is contemplated, the court should provide the parties with 'clear and unambiguous notice of the intended consolidation either before the hearing commences or at a time which will afford the parties a full opportunity to present their respective cases.'" *Air Line Pilots Ass'n, Int'l v. Alaska Airlines, Inc.*, 898 F.2d 1393, 1397 (9th Cir.) (quoting *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981), other internal marks omitted), *cert. denied*, 498 U.S. 821 (1990). Although the findings of fact and conclusions of law ordinarily made by a court granting a preliminary injunction are not binding at trial on the merits, *Camenisch*, 451 U.S.

---

[31] When the state, or in this case a local school board, is a party, the third and fourth considerations are largely the same. *Scott v. Roberts*, 612 F.3d 1279, 1290 (11th Cir. 2010).

at 395, and the rule provides that evidence received becomes part of the record and need not be repeated at trial, Fed. R. Civ. P. 65(a)(2), in this case, the very same facts that will be the subject of the preliminary injunction hearing are those that will support a final decision on the merits. The interest of justice dictates that the public School Board not be required needlessly to defend the same policies at a full evidentiary hearing on the motion for preliminary relief and then again at a trial. Consolidation is also warranted due to the intensely factual nature of a First Amendment forum analysis in the school context, which turns on many factors and contextual nuances, and the balancing of interests between competing First Amendment principles, with the School Board's obligations under the Establishment Clause on the one hand and the private rights of teachers, students, and community members on the other. The preliminary relief the plaintiffs seek – enjoining enforcement of the consent decree and all implementing school policies – is sweeping and requires careful consideration in light of the history of Establishment Clause violations in this School District. Deciding these issues once and for all on a full record will be most beneficial to all parties.

The court concludes that in the interim before the combined hearing takes place, preserving the status quo is appropriate.[32] There is one exception, however – the challenge to provisions restricting employee participation in religious or baccalaureate services. With regard to this claim, the undisputed facts alleged and First Amendment analysis do not require a hearing before providing preliminary relief. This is the only claim involving allegations of school officials threatening discipline for private conduct outside of school or a school event. A private religious service is not a school event, even if it takes place in rented school facilities. Although the consent decree and written school policies

---

[32] The undisputed facts show that not one teacher or employee has been actually disciplined for violating either the consent decree or school policy. Additionally, a question exists in the court's mind as to whether the employees are legally bound by the consent decree, and thus under threat of contempt for a violation of its terms. In the prior litigation, none of the parties questioned whether the employees were personally bound by the consent decree. The would-be intervenors argued they were at risk of contempt for purposes of standing; plaintiffs and defendants assumed that to be the case. The relevant case law suggests that may not be the case. *See Local No. 93 v. City of Cleveland*, 478 U.S. 501, 530 (1986) (stating, "only the parties to the decree can be held in contempt of court for failure to comply with its terms"). The court will require briefing from the parties before deciding the issue.

indicate that private participation in such services is permitted, and only official conduct endorsing religion is proscribed, Metty's unrefuted declaration states that school officials threatened him with discipline if he wore certain clothing or sat in a particular place during the service, causing him to miss the previous baccalaureate service and fear discipline from participation in subsequent baccalaureate services; also, other teacher declarations assert a chill to their right to participate in baccalaureate services, which is objectively reasonable in light of this threat.[33] Because there is a strong likelihood that baccalaureate services will take place for this school year prior to the consolidated hearing, the threat of chill in this context is now sufficiently imminent and the court finds it appropriate to enter a preliminary injunction to prohibit the School Board from enforcing that portion of the consent decree, and any school policy, which restricts School District employees' participation in private religious or baccalaureate services.[34]

Accordingly, for the reasons stated above, it is hereby ORDERED:

1. The plaintiffs' renewed request for a preliminary injunction and hearing (doc. 66) is **GRANTED** as follows:

    a. The School Board is enjoined form enforcing any school policy that restrains in any way an employee's participation in, or speech or conduct during, a private religious service, including baccalaureate,

---

[33] Metty's declaration was dated April 6, 2010, which was prior to the 2010 baccalaureate services. In the declaration, Metty stated he was specifically threatened with discipline by Superintendent Wyrosdick and the School Board's attorney if he sat with other teachers or wore attire that identified him as a teacher. Wyrosdick's affidavit submitted in opposition to the motion for preliminary injunction does not deny this allegation. The plaintiff's renewed motion for preliminary injunction, filed in August 2010, requests permission to amend Metty's allegations to include that as a result of the threats of discipline, he did not attend the 2010 baccalaureate service in May 2010, in honor of his daughter; that he plans to attend future baccalaureate services; and that he wants to attend them free of such threats. That request is granted.

[34] The court has considered the factors necessary to issuing a preliminary injunction with regard to this issue and concludes: (1) there is a substantial likelihood of success on this claim because the speech and conduct occurs in a private religious service; (2) there is a substantial threat of irreparable injury to the employee plaintiffs' First Amendment rights from the resulting chill; (3) and the threatened injury outweighs threatened harm from such an injunction, and is not adverse to the public interest, because the school could easily disclaim as private conduct occurring at a private religious service. *See Santa Fe*, 530 U.S. at 302 (emphasizing the crucial distinction between government endorsement of religion and private endorsement of religion).

Case No. 3:10cv142/MCR/CJK

pending the consolidated hearing.

b. The request for a hearing is GRANTED, and the parties are hereby notified of the court's intention to consolidate the preliminary injunction hearing with the trial on the merits. The court is contemplating a 45-60 -day period for discovery, followed by a 30-day period for briefing with a final hearing mid-summer.

c. A Rule 16 scheduling conference will be held on Monday, **March 28, 2011, at 1:00 p.m. (C.D.T.)**, to discuss the court's intention to consolidate and advance the trial, to hear objections, and to discuss additional scheduling matters. Any party wishing to appear by telephone may contact the court by calling Ms. Kathy Rock, 850-435-8448.

2. The defendants' motions to dismiss (docs. 22 & 64) are **DENIED**. However, the court notes that this order narrows the scope of the complaint. In response to defendants' Rule 10(b) objection[35] and in light of the above analysis, the court specifies that the following factual allegations need not be responded to and are hereby stricken from the complaint:

a. ¶¶ 25; 113 through and including 127;

b. ¶¶ 169 through and including 181;

c. ¶¶ 33; 183 through and including 228.

3. The separate motions to dismiss of the Superintendent and the Principal of Pace High School (docs. 23 & 56) are **DENIED**.

---

[35] Rule 10(b) requires that each claim be founded on "a separate transaction or occurrence;" however, it does not require use of separate counts to state different theories of recovery. *See* 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1324 (3d ed. 2004). While the court may grant a motion to dismiss with leave to amend, or a motion for more definite statement to remedy a Rule 10(b) violation, *see Veltmann v. Walpole Pharmacy, Inc.*, 928 F. Supp. 1161, 1164 (M.D. Fla. 1996), the court concludes that it is not necessary in this case. The above ruling narrows the scope of the complaint to some degree, thereby alleviating the difficulty of filing a responsive pleading.

4.    The stay in this case is hereby lifted.

**DONE AND ORDERED** on this 21st day of March, 2011.


                                    s/ *M. Casey Rodgers*
                                    **M. CASEY RODGERS**
                                    **UNITED STATES DISTRICT JUDGE**